UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

OTIS COLE #232716,

    Plaintiff,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS, TOM PRISK, FRED GOVERN, and DARRIN VIITALA,

    Defendants.
_____/

Case No. 2:18-cv-159

Hon. Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.   Introduction

This is a civil rights action brought by prisoner Otis Cole pursuant to 42 U.S.C. § 1983 for events that occurred while he was incarcerated at the Marquette Branch Prison. Cole says that he faced significant difficulties in attempting to participate in Moorish Science Temple (MST) services. His amended complaint alleges that the Defendants – Chaplin Tom Prisk, Assistant Residential Unit Supervisor (ARUS) Fred Govern, and Residential Unit Manager (RUM) Darrin Viitala – retaliated against him and infringed on his right to freely exercise his religion, in violation of the First Amendment. He also says that the Defendants violated his rights under the equal protection clause of the Fourteenth Amendment.

1

Cole sues all Defendants in their official and individual capacities. He seeks a declaratory judgment, money damages, costs and fees. He does not seek injunctive relief.

The Defendants have filed a motion for partial summary judgment. (ECF No. 33, PageID.125; ECF No. 34, PageID.127.) The Defendants argue that Cole's claims against them in their official capacities are barred by the doctrine of sovereign immunity. (ECF No. 34, PageID.132-133.) They also argue that Cole's equal protection claim should be dismissed because he failed to allege a comparative group to show he is receiving disparate treatment. (ECF No. 34, PageID.133-134.)

Cole argues that his official capacity claims should not be dismissed because he still requests declaratory judgment that Defendants violated his constitutional rights. (ECF No. 40, PageID.150-151.) Cole also asserts that his equal protection claims should not be dismissed because he has alleged that he suffered disparate treatment by comparison to a defined group. (ECF No. 40, PageID.151-153.) Defendants have not replied to Cole's response.

The undersigned concludes that the doctrine of sovereign immunity bars Cole's claims against Defendants in their official capacity, and that Cole has failed to state any cognizable Fourteenth Amendment equal protection claims. The undersigned respectfully recommends that the Court (1) grant the Defendants' motion, (2) dismiss Cole's retaliation and free exercise claims against Defendants in their official capacities, and (3) dismiss Cole's equal protection claims. If the Court adopts this

recommendation, Cole's retaliation and free exercise claims against Defendants in their individual capacities will remain.

## II. Additional Procedural History

On September 25, 2018, Cole filed this action in federal court. (ECF No. 1, PageID.1.) His initial complaint alleged that Defendants retaliated against him and infringed his right to freely exercise his religion, in violation of the First Amendment. He also alleged violations of the Religious Land Use and Institutionalized Person Act (RLUIPA), 42 U.S.C. § 2000cc, et seq., and the equal protection clause of the Fourteenth Amendment. Cole's initial complaint requested a declaratory judgment, injunctive relief, money damages, costs and fees. He sued the Defendants in their official and individual capacities.

Subsequently, Cole subsequently amended his complaint. (*See* ECF No. 30, PageID.113.) The amended complaint dropped Cole's RLUIPA claims and his requests for injunctive relief.

## III. Cole's Allegations in Amended Complaint

In his amended complaint (ECF No. 32, PageID.118), Cole says that he is a "sincere adherent to the Muslim faith, and an active member of the Moorish Science Temple." (ECF No. 32, Page ID.119.) He says that attending religious service is a "central component to the practice" of his religion. (*Id.*) Cole says that in December 2017, he requested a Declaration of Religious Preference form from ARUS Govern in order to participate in MST services. (*Id.*)

Govern denied Cole's request for this form and stated that Cole would not be able to attend religious services due to Cole's Security Threat Group (STG) status, and because Cole "'gets into to [sic] much trouble.'" (*Id.*)  Cole says that he was unaware of any MDOC policy preventing him from attending MST services and filed a grievance that complained about Govern's decision. (*Id.*, PageID.120.)

Cole says that he subsequently obtained a copy of a Declaration of Religious Preference form. He says that, on December 15, 2017, he completed this form and submitted it to Govern's office in-box. (*Id.*, PageID.121).

Cole says that between December 2017 to February 2018, he sent no less than seven "kites" (an internal form of communication between prisoners and staff members) to Defendants requesting access to religious services. (*Id.*) On February 25, 2018, Prisk provided Cole a second Declaration of Religious Preference form. (*Id.*) Cole completed it and submitted it to Viitala. (*Id.*)

On April 15, 2018, after four additional kites went unanswered, Cole filed a second Prisoner/Parole Grievance that named all three of the defendants for "constructively denying him access to group religious services by failing to process his religious preference forms, and by refusing to place him on the weekly call-out for Moorish Science Temple of America religious services." (ECF No. 32, PageID.121.) At Steps I and II, Prisk responded by informing Cole that he had not been allowed to attend religious services because Cole "failed to submit a specific request to" Prisk. (*Id.*) Cole alleges that he submitted at least five kites to Prisk by the time of Prisk's response. (*Id.*)

4

Cole says he wrote four more kites to Prisk that requested access to religious services. (ECF No. 32, PageID.122.) The latter two kites were hand-delivered to Prisk by different prisoners. (*Id.*) Cole says that Prisk read each kite and stated that he would not place Cole on the religious call-out list until Cole stopped writing grievances. (*Id.*) Cole, however, wrote Prisk two more kites to inform him that Cole would not write any more kites and that he "just wanted" to attend religious service. (*Id.*) Those kites went unanswered. (*Id.*)

Subsequently, Cole filed another grievance against Prisk for retaliating against Cole (ECF No. 32, PageID.122-123.) The grievance is based on Prisk's alleged intentional failure to include Cole on the religious call-out list. (*Id.*)

After Cole's three grievances were exhausted, Cole filed this action. (*Id.*) When the dispute entered the Western District Court's Early Mediation program, Defendants allowed Cole to attend religious ceremonies. (ECF No. 32, PageID.122-123.)

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | Govern | 1st Amendment Free Exercise | December 2017 | In December of 2017, Govern denied Cole access to the religious preference form, citing Cole's STG status. (ECF No. 32, Page ID.119.) |
| 2 | Govern | 1st Amendment Free Exercise | December 2017 | In December of 2017, Govern violated MDOC policy by failing to process Cole's religious preference form. (ECF No. 32, Page ID.120.) |
| 3 | Prisk | 1st Amendment Free Exercise | About December 2017 to February 2018 | After receiving several kites regarding Cole's request to attend MST services, Prisk failed to promptly respond or allow Cole access to MST services. (ECF No. 32, PageID.121.) |
| 4 | Govern | 1st Amendment Free Exercise | About December 2017 to | After receiving several kites regarding Cole's request to attend MST services, Govern failed to promptly respond or allow Cole access |

5

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| | | | February 2018 | to MST services. (ECF No. 32, PageID.121.) |
| 5 | Viitala | 1st Amendment Free Exercise | About December 2017 to February 2018 | After receiving several kites regarding Cole's request to attend MST services, Viitala failed to promptly respond or allow Cole access to MST services. (ECF No. 32, PageID.121.) |
| 6 | Viitala | 1st Amendment Free Exercise | About February 25, 2018 to April 2019 | Cole submitted a religious preference form that went unprocessed until Cole was permitted to attend MST services. (ECF No. 32, PageID.121-123.) |
| 7 | Govern | 1st Amendment Free Exercise | About February 2017 to April 2019 | Govern failed to permit Cole to attend MST services until after this action was filed. (ECF No. 32, PageID.121-123.) |
| 8 | Prisk | 14th Amendment Equal Protection | About December 2017 to April 2019 | Without specifics, Cole alleges that Prisk allowed similarly-situated prisoners to attend religious services but not him. ECF No. 32, PageID.119-123.) |
| 9 | Govern | 14th Amendment Equal Protection | About December 2017 to April 2019 | Without specifics, Cole alleges that Govern allowed similarly-situated prisoners to attend religious services but not him. ECF No. 32, PageID.119-123.) |
| 10 | Viitala | 14th Amendment Equal Protection | About December 2017 to April 2019 | Without specifics, Cole alleges that Viitala allowed similarly-situated prisoners to attend religious services but not him. ECF No. 32, PageID.119-123.) |
| 11 | Prisk | 1st Amendment Retaliation | June 7, 2018 | Prisk allegedly commented to the messenger of Cole's kite that Cole would not be allowed to attend MST services because he was the "grievance guy" and the "complainer." (ECF No. 32, PageID.122.) |
| 12 | Prisk | 1st Amendment Retaliation | June 15, 2018 | Prisk allegedly commented to the messenger of Cole's kite that Cole would not be allowed to attend MST services because he was the "grievance guy" and the "complainer." (ECF No. 32, PageID.122.) |

### IV. Dismissal Standard

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Put differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so

7

long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

V.     **Sovereign Immunity**

The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). Here, Cole seeks declaratory judgment, money damages, costs and fees from the Defendants in their official capacity. Moreover, since filing an amended complaint, Cole acknowledges that he no longer requests injunctive relief – he only request declaratory judgment. (ECF No. 40, PageID.150-151.)

A Plaintiff may still sue a state official in his official capacity in limited circumstances. "There are three exceptions to a State's sovereign immunity: (a) when

8

the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008); *see Abick v Michigan*, 803 F.2d 874, 877 (6th Cir. 1986) (holding that the State of Michigan has not consented to suit). Because Cole does not request injunctive relief, as required to trigger the *Ex parte Young* exception, no exception is at issue.

Accordingly, the undersigned recommends dismissal of Cole's claims against the Defendants in their official capacities.

## VI.    Equal Protection Claim

Defendants argue that Cole failed to state an equal protection claim. (ECF No. 34, PageID.133-134.) The undersigned agrees.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To establish a cognizable equal protection claim, plaintiffs must show "that they were 'intentionally singled out by the government for discriminatory adverse treatment.'" *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 905 (6th Cir. 2019) (quoting *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005)). "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis

9

which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *TriHealth, Inc.*, 430 F.3d at 788 (citing *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710–11 (6th Cir. 2005)).

Cole's alleges that he was denied the opportunity to participate in MST services while other similarly situated prisoners were allowed to attend. (ECF No. 32, PageID.123.) He appears to allege that he is a "class of one" plaintiff and that his disparate treatment is a result of the animus Defendants have for him filing kites and grievances. But a review of Cole's allegations and the record shows that Cole failed to identify similarly-situated prisoners or a class of prisoners who were treated differently. As noted above, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted). Cole's amended complaint contains numerous factual allegations to support his retaliation and free exercise claims. But his amended complaint is silent as to facts supporting his equal protection claims. Therefore, the undersigned concludes that Cole has failed to state equal protection claims on which relief might be granted.

## VII. Recommendation

The undersigned respectfully recommends that the Court (1) grant the Defendants' motion, (2) dismiss Cole's retaliation and free exercise claims against Defendants in their official capacities, and (3) dismiss Cole's equal protection claims. If the Court adopts this recommendation, Cole's retaliation and free exercise claims against Defendants in their individual capacities will remain.

Dated:   June 15, 2020

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).